896 F.2d 1352
 HOME INSURANCE COMPANY, Home Indemnity Company, City
Insurance Company, Plaintiffs-Appellants,
v.
THOMAS INDUSTRIES, INC., A Foreign Corporation, American
Stevedoring Corporation, a foreign corporation, TLM, Inc.,
as putative successor in interest to American Stevedoring
Corp., a foreign corporation, Thomas Holding Company, Inc.,
a foreign corporation, Earl James Thomas, individually and
as officer and director of Thomas Industries, Inc., American
Stevedoring Corp., TLM, Inc., and Thomas Holding Company,
Inc., Lindsey James Thomas, individually and as officer and
director of Thomas Industries, Inc., American Stevedoring
Corp., TLM, Inc. and Thomas Holding Company, Inc., Kingsley
Head Thomas, individually and as officer and director of
Thomas Industries, Inc., American Stevedoring Corp., TLM,
Inc., and Thomas Holding Company, Inc., Defendants-Appellees.
 No. 89-8228.
 United States Court of Appeals,
Eleventh Circuit.
 March 22, 1990.
 
 David C. Marshall, Atlanta, Ga., Larry D. Thompson, William S. Duffey, Jr., Dwight J. Davis, Fred G. Codner, King & Spaulding, Atlanta, Ga., for plaintiffs-appellants.
 J. Scott Jacobson, David Franklin Cooper, Holt, Ney, Zatcoff & Wasserman, Atlanta, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 KRAVITCH, Circuit Judge:
 
 
 1
 The Home Insurance Company appeals from the district court's dismissal of its action on the basis of improper venue and from the district court's denial of its motion to conduct additional discovery on the issue of venue. Because we find that the district court abused its discretion in dismissing the case for lack of venue, we reverse and remand.
 
 BACKGROUND
 
 2
 This diversity action was filed by The Home Insurance Company, The Home Indemnity Company, and City Insurance Company (referred to collectively as "The Home") in the Northern District of Georgia. The case was filed against seven defendants, consisting of four corporations: Thomas Industries, Inc., American Stevedoring Corp. ("ASC"), TLM, Inc., and Thomas Holding Company, Inc. (referred to collectively as the "Thomas Companies") and three members of the Thomas family running those corporations: Earl James Thomas, Lindsey James Thomas, and Kingsley Head Thomas (referred to collectively as "the Thomases").
 
 
 3
 The action arises out of earlier litigation between The Home and Kebo Limited, a company operated by the Thomases, in connection with an insurance agreement entered into by those parties in 1981. The insurance agreement related to the provision of workers' compensation for certain contract labor that ASC, a Thomas Company, provided to various stevedoring operations in the United States.[1] The agreement provided that The Home would not be ultimately liable for workers' compensation claims asserted under the policy that it issued. Instead, although The Home would issue payment checks to workers' compensation claimants, it would be reimbursed for all payments made. Kebo Limited was the offshore reinsurance company set up by the Thomases in Bermuda for the sole purpose of making reimbursements to The Home. The insurance agreement between The Home and Kebo was embodied in three contracts: a Reinsurance Agreement, a Security Agreement, and a Claim Management Agreement (referred to collectively as the "Reinsurance Agreement").[2]
 
 
 4
 In 1985, the arrangement between Kebo and The Home fell apart. The Home apparently sought an increase in the amount of the letter of credit maintained by Kebo. The Thomases resisted the increase and The Home notified the Thomases that it would not renew the policy upon its expiration. The Thomases, through Kebo, then ceased making reimbursements to The Home and suspended Kebo's business operations. In September 1985, Kebo filed suit against The Home in federal district court in Florida, alleging that The Home had mishandled and improperly paid claims for which Kebo became liable under the Reinsurance Agreement. The Home counterclaimed, seeking damages resulting from the Thomases' refusal to reimburse The Home for payments already made to claimants and for anticipated insurance payments for future workers' compensations claims. During the lawsuit, Kebo's Board of Directors voted to liquidate Kebo pursuant to the 1981 Bermuda Companies Act. Judgment in favor of The Home was entered in the amount of $567,711.14. The judgment has not been satisfied. The Home alleges that this is because Kebo's assets were squandered by the Thomases and the Thomas Companies.
 
 
 5
 In the instant suit, The Home seeks to pierce Kebo's corporate veil in order to hold the Thomases and the defendant companies that they own and control responsible for squandering Kebo's assets and otherwise defrauding The Home. To this end, The Home filed a four count complaint in the Northern District of Georgia ("Northern District") in August of 1988. Count I is a breach of contract claim, seeking to hold the defendants liable for damages resulting from Kebo's breach of contract. Count II seeks to pierce the corporate veil of Kebo in order to hold defendants liable for all damages suffered by The Home. Count III is a claim seeking punitive damages for fraud and conspiracy by the defendants designed to render Kebo judgment proof. Count IV alleges stubborn litigiousness for which The Home seeks costs of litigation and attorney's fees.
 
 
 6
 In September 1988, the defendants moved to dismiss the complaint on the ground that venue in the Northern District of Georgia was improper. In December 1988, the district court granted that motion, finding that venue was not proper under DeLong Equipment Co. v. Washington Mills Abrasive, 840 F.2d 843, 855 (11th Cir.1988) because the weight of the contacts relating to The Home's claims did not rest most heavily in the Northern District. The district court declined to transfer the action to a district in which it might have been brought.
 
 
 7
 The Home then moved the court to alter or amend the judgment by denying the defendants' motion to dismiss for improper venue or, in the alternative, to permit a time period for discovery during which The Home could develop further evidence of contacts in the Northern District. The district court denied this motion, noting that The Home had already had adequate opportunity for discovery prior to the issuance of the court's December order.
 
 DISCUSSION
 A. Standard of Review
 
 8
 This court reviews the dismissal of a lawsuit for improper venue under the standard of abuse of discretion. Dynes v. Army Air Force Exchange Serv., 720 F.2d 1495, 1499 (11th Cir.1983); Roofing & Sheet Metal Services, Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982 (11th Cir.1982); Stephens v. Entre Computer Centers, Inc., 696 F.Supp. 636 (N.D.Ga.1988). In this case, our review is affected by the fact that the district court did not hold an evidentiary hearing before dismissing The Home's complaint. When a complaint is dismissed on the basis of improper venue without an evidentiary hearing, "the plaintiff must present only a prima facie showing of venue...." DeLong Equip. Co., 840 F.2d at 845 (11th Cir.1988). Further, "[t]he facts as alleged in the complaint are taken as true to the extent they are uncontroverted by defendants' affidavits." Id. When affidavits conflict, the court is inclined to give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff. Id. The district court's denial of The Home's motion for additional discovery likewise is reviewable for abuse of discretion.
 
 B. The DeLong Test
 
 9
 In cases where federal jurisdiction is founded on diversity, the question of venue is governed by 28 U.S.C. Sec. 1391(a). Under that statute, venue is proper in the Northern District if that is where all of the plaintiffs reside, all of the defendants reside, or where the "claim arose."[3] In the instant case, The Home claims that venue is proper in the Northern District because that is where the claim arose. The parties agree that the appropriate test for determining where a "claim arose" for purposes of venue is the "weight of the contacts" test set out in DeLong Equipment Co. v. Washington Mills Abrasive, 840 F.2d 843, 855 (11th Cir.1988). In DeLong, this court made clear that venue should be established "in the district where the contacts weigh most heavily." Id. at 855. We further stated that "[o]nce it is determined that the weight of the contacts rests most heavily in a particular district, the court then must look to see whether venue is established over each defendant. Evidence that a particular defendant has performed a substantial or significant act related to the claim in the district where contacts weigh most heavily suffices to establish venue over that defendant." Id. (citations omitted).
 
 
 10
 C. Application of DeLong to the Instant Suit
 
 1. Holding of the district court
 
 11
 Determining the nature of the present suit is essential to answering the question of where proper venue lies. The district court viewed the action as one arising from a breach of contract, noting that it was primarily one to enforce The Home's Florida judgment. Thus, when applying the DeLong test, the district court concentrated on actions relating to the execution of the contract between The Home and Kebo. The court stated that, "[w]hile some negotiations for the agreements took place in Georgia, the agreements were executed in New York and Bermuda. When a claim arises from a contract, the place of execution of a contract, rather than the place of negotiations, controls where the claim arises for venue purposes under section 1391(a)." The Home Insurance Company v. Thomas Industries, 1:88-cv-1730-RCF, slip op. at 2 (N.D.Ga. Dec. 7, 1988) (footnote omitted).
 
 
 12
 The court also noted that it could consider the place of performance of the contract in determining where the claim arose. It found that the place of performance in the instant case would be New York and Bermuda because payments between the parties relating to the Reinsurance Agreement were to be made in those places.
 
 
 13
 The court took note of The Home's argument that venue is proper in the Northern District because defendants exercised control over Kebo through actions taken in Georgia. The court, however, found these actions "insubstantial in comparison to the alleged actions taken in Bermuda by the Kebo Board of Directors to render Kebo judgment proof." The Home, slip op. at 3. Finally, the court noted that in a suit to enforce a contract, the place of entry of the order (Florida in this action) is an important consideration in determining where the claim arose.
 
 2. Contentions of The Home
 
 14
 The Home contends that the district court erred in treating its action as one based on breach of contract rather than on a theory of fraud and piercing the corporate veil. It claims that because of this, the court inappropriately focused on facts such as the place of performance and the location where the contract was entered into--facts that are relevant to venue only as it relates to a breach of contract claim.
 
 
 15
 There is no question that the instant litigation is related to the previous breach of contract suit between The Home and Kebo. Indeed, it seems unlikely that The Home would have filed the instant suit had it been able to collect its judgment from Kebo. It would be inaccurate, however, to characterize the suit as one primarily for breach of contract. While Count I sets forth a contract claim, Count II alleges fraud, and Count III is a claim to pierce the corporate veil. As Kebo is not named as a defendant, it appears that the plaintiffs will be unable to prevail on their Count I contract claim unless they can show some sort of connection between the Thomas Companies and Kebo. Thus, the claim for piercing the corporate veil is central to The Home's complaint. In addition, The Home seeks damages distinct from the damages previously awarded in the suit between The Home and Kebo.
 
 
 16
 a. Weight of the contacts
 
 
 17
 In arguing that the weight of the contacts properly establishes venue in the Northern District, The Home stresses that its action is based on the Thomas Companies' manipulative and fraudulent conduct that rendered The Home's breach of contract judgment meaningless. According to The Home, meetings that took place in Atlanta relating to the Reinsurance Agreement provide evidence of fraudulent conduct. The Home alleges that the Thomases attended meetings in the Northern District in their individual capacities and in their capacity as officers and directors of the corporate defendants.
 
 
 18
 Plaintiffs have presented the affidavit of Ben Young, an employee of The Home, to support their contention that negotiations which culminated in the ASC/Kebo/Home deal primarily took place in Georgia. The Home also offered the affidavit of George L. Abernathy, an employee of The Home based in Atlanta, to show that renewals of the ASC (and later TLM) policies and the Kebo Reinsurance Agreement were conducted in Atlanta. In addition, the Reinsurance Agreement required notice to Thomas Industries, Inc. at an Atlanta address through Lindsey J. Thomas, also a resident of Atlanta.
 
 
 19
 The Home states that the evidence it would present at trial relevant to the veil-piercing claim would also focus on the Thomas Companies' conduct in the Northern District. In order to state a claim for piercing the corporate veil, The Home must show that "the subsidiary is a mere instrumentality of the parent, 'that the separate personalities of the corporations and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud.' " Florida Shade Tobacco Growers, Inc. v. Duncan, 150 Ga.App. 34, 256 S.E.2d 644 (1979) (quoting Farmers Warehouse of Pelham v. Collins, 220 Ga. 141, 137 S.E.2d 619, 625 (1964)). According to The Home, the Thomases own and control a complicated network of companies consisting of 32 affiliated corporations with 157 divisions incorporated in various states. The Home alleges, however, that all of these corporations (including Kebo, when it existed) are operated out of the Thomases' "world headquarters" building in Norcross, Georgia. The Home also alleges that these companies operate as essentially the same company since they share personnel, expenses, and office space. According to The Home, evidence of common ownership of overlapping corporations, common management and operation of those companies, and commingling of corporate assets is located in the Northern District.
 
 
 20
 Under DeLong, to survive a motion to dismiss for lack of venue, plaintiffs need only make out a prima facie showing that the weight of the contacts is sufficient to establish venue in the Northern District. 840 F.2d at 845. If The Home's claims are understood as fraud and veil piercing claims, then venue is proper in the district where meetings and actions took place that bear a direct relationship to the claims asserted by The Home.[4] In the absence of clear evidence to the contrary, the court must take as true The Home's allegations that the corporations in the Thomases' network are in fact operated out of the "world headquarters" building in Norcross, Georgia. Additionally, it must take as true the allegation that, even at the time that the initial meetings were held in Atlanta concerning the Reinsurance Agreement between The Home and Kebo, the Thomases were engaging in a scheme to defraud The Home which culminated in the liquidation of Kebo.
 
 
 21
 Affidavits presented by the three Thomas defendants do not controvert statements in the affidavits offered by The Home. The defendants do not contend that the Atlanta meetings did not take place, but state that the plaintiffs have presented no evidence that a fraudulent scheme was hatched at such meetings. We find that at this stage of the litigation, the plaintiff is not required to prove that the meetings facilitated fraudulent conduct by the defendants. In Vest v. Waring, 565 F.Supp. 674 (N.D.Ga.1983), the court found that the location at which an alleged conspiracy violative of the antitrust laws was conceived could provide the basis for venue in that district. The court stated that:
 
 
 22
 On a threshold motion involving venue, this court cannot, and indeed should not, make a determination regarding the merits that must be reserved for the factfinder once all discovery has terminated. This court need not, therefore, find at this time that the defendants attending this meeting in fact knowingly participated in a conspiracy.
 
 
 23
 565 F.Supp. at 692. We find the reasoning in Vest applicable to the case before us.
 
 
 24
 The defendants also dispute The Home's contention that venue can be based on the claim that the Thomas Companies are part of a "control group" based in Norcross. The defendants point to British American Insurance Co. v. Lee, 403 F.Supp. 31 (D.Del.1975) for the proposition that even if a Delaware "control group" influenced corporate directors and wasted the assets of a Bahamian company, such acts must be viewed as occurring in the Bahamas where the influence was directed and the assets located. We agree with the plaintiffs that British American is distinguishable from the instant case. In British American, the defendant had not undertaken any significant conduct in the subject district that related to plaintiff's claim of breach of fiduciary duty. Further, in transferring the suit to an alternate forum, the British American court concentrated on the fact that the plaintiff had presented no evidence that the defendant resided in Delaware or operated a business in that state. In this case, the corporate defendants allegedly were headquartered in the district where the action was brought and defendant Lindsey Thomas resided in the district.
 
 
 25
 b. Performance of acts within the district
 
 
 26
 Under DeLong, once the weight of the contacts is established, the court must look to see whether venue is established over each defendant. 840 F.2d at 855. One of the ways a plaintiff may fulfill this requirement is to show that a particular defendant has performed a substantial or significant act related to the claim in the district where contacts weigh most heavily. Id.
 
 
 27
 Plaintiffs have provided evidence that Earl J. Thomas and Lindsey J. Thomas, through negotiations with representatives of The Home, performed significant acts within the Northern District. We find, however, that the evidence presented by the plaintiffs is insufficient to establish that Kingsley Thomas performed significant acts in the Northern District relating to The Home's claims. The Home's complaint merely states that Kingsley Thomas was a director and/or officer of defendant corporations. The affidavits offered by The Home provide no evidence that Kingsley Thomas participated in negotiations relating to the Reinsurance Agreement or was active in the handling of the ASC/TLM/Kebo matters during the duration of the contract. Thus, we find that with respect to Kingsley Thomas, further discovery is necessary to determine whether plaintiffs may proceed against him in the Northern District.
 
 
 28
 As to the corporate defendants, at the time of the events complained of, Thomas Industries, Inc. had a mailing address in Atlanta, and ASC and TLM were companies on whose behalf the Thomases undertook actions in Atlanta relating to the plaintiffs claims. At the present stage of litigation, it is difficult to discern the status of the Thomas Holding Company. According to the affidavit of George L. Abernathy, who negotiated the Reinsurance Agreement for The Home, the Thomases instructed him that they had formed the Thomas Holding Company, Inc. as a holding company for ASC and that all clerical payroll would be reported and charged through the Thomas Holding Company. According to an affidavit of Earl J. Thomas, however, the Thomas Holding Company does not now exist, nor has it ever existed. Instead, claims Thomas, the name "Thomas Holding Company, Inc." was a name initially considered (but never used) for the corporation which was formed and operated as TLM, Inc. Given the limited evidence before us, we draw no conclusions on the issue of venue with respect to the Thomas Holding Company and trust that the status of this defendant will become clearer as discovery in this case progresses.
 
 
 29
 c. Convenience
 
 
 30
 The Home argues that defendants should not be allowed to use venue as a means to avoid litigation on the merits or to render litigation more inconvenient for the parties. In DeLong, this circuit stressed that "venue primarily addresses the convenience of the forum." 840 F.2d at 857. The defendants have failed to show that a suit in the Northern District would inconvenience them to such an extent as to render venue improper. In addition, the plaintiffs have argued that the Northern District is the only district in which it will be able to obtain personal jurisdiction over all of the defendants. This is an important consideration. The DeLong court stated that:
 
 
 31
 Given the judicial system's great concern with the efficient conduct of complex litigation, an important consideration in deciding appropriate venue is whether a forum can meet the personal jurisdiction and venue requirements for most or all of the defendants in a multi-party lawsuit.
 
 
 32
 840 F.2d at 857. We are persuaded by The Home's argument that dismissing the suit on the basis of venue may render it incapable of pursuing its action in any other single court, as it may be unable to obtain personal jurisdiction over all of the defendants in any other jurisdiction.
 
 
 33
 Finding that venue is proper as to Earl Thomas, Lindsey Thomas, Thomas Industries, ASC, and TLM in the Northern District, we reverse the district court's dismissal of the case for lack of venue as to those defendants. Further, we direct the court to allow additional discovery as necessary to clarify the question of venue as it relates to Kingsley Thomas and the Thomas Holding Company. After such discovery, the district court shall determine whether venue is proper as to those two defendants.
 
 
 34
 For the above reasons, the case is REVERSED and REMANDED to the district court for proceedings in accordance with this opinion.
 
 
 
 [1]
 Beginning in 1984, the workers' compensation claims were paid to employees of TLM, Inc., an apparent successor to ASC
 
 
 [2]
 Apparently, this arrangement was entered into because of its favorable tax consequences for the Thomas Companies
 
 
 [3]
 28 U.S.C. Sec. 1391(a) states:
 A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.
 
 
 [4]
 Once venue is established over these claims, we find that venue is proper in the Northern District for the breach of contract claim asserted in Count I, given that the plaintiffs' success on the contract claim depends on their ability to pierce the corporate veil