KEARNEY PARTNERS FUND, LLC, by and through LINCOLN PARTNERS FUND, LLC, Tax Matters Partner, Plaintiff,

v.

The UNITED STATES of America, by and through its agent, the INTERNAL REVENUE SERVICE, Defendant.

Case No. 2:10–CV–153–FtM–36SPC.

United States District Court,
M.D. Florida,
Ft. Myers Division.

Sept. 29, 2011.

---

Carlos A. Kelly, Vicki L. Sproat, Henderson, Franklin, Starnes & Holt, PA, G. Gordon Harrison, Pavese Law Firm, Ft. Myers, FL, Charles E. Hodges, II, Kilpatrick Townsend & Stockton LLP, Atlanta, GA, for Plaintiff.

Katherine Walsh, Paul Andrew Allulis, Michael N. Wilcove, Washington, DC, for Defendant.

### ORDER

CHARLENE EDWARDS HONEYWELL, District Judge.

**THIS CAUSE** is before the Court on the Internal Revenue Service's ("IRS") Motion to Transfer (Dkt. 29). In support of the Motion, the IRS filed several exhibits (Dkts. 29–36, 38) and memoranda (Dkts. 37, 48). Plaintiff Kearney Partners Fund, LLC ("KPF")[1] filed responses in opposition to the Motion to Transfer (Dkts. 40, 51), and several exhibits in support of its opposition (Dkts. 41–45). The parties appeared for an evidentiary hearing on September 7, 2011. Raghunathan Sarma testified at the hearing and exhibits from Plaintiffs and the Defendant were admitted into evidence. Upon due consideration of the testimony, exhibits, memoranda and argument of counsel, the Court will deny the Motion to Transfer.

## I. BACKGROUND

On March 9, 2010, KPF filed its complaints against the IRS (Dkt. 1) contesting the findings and adjustments of the IRS in the Notices of Final Partnership Administrative Adjustment ("FPAAs"), dated December 9, 2009, pursuant to 26 U.S.C. § 6226(a) (Dkt. 52 at ¶ 1). KPF, by and through Lincoln Partners Fund, LLC ("LPF"), which is the tax matters partner and notice partner of KPF, seeks the deposit made to the IRS to file the present action, a redetermination of the substantive partnership items and adjustments set forth in the FPAAs, and a determination that no penalty can apply in this case.

---

1. The present case is the lead case of five consolidated actions (Nos. 2:10–cv–154–FtM–36DNF, 2:10–cv–157–FtM–36DNF, 2:10–cv–158–FtM–36DNF, and 2:10–cv–159–FtM–36DNF). The additional plaintiffs are Lincoln Partners Fund, LLC and Nebraska Partners Fund, LLC.

(Dkt. 52, ¶ 2). The adjustments in the FPAAs relate to tax periods of KPF ending December 14, 2001 and December 19, 2001 (Dkt. 52, Exs. A, B). Generally, the FPAAs disallow and/or disregard partnership income and losses, assert at least ten alternative contentions with respect to the adjustments, and state alternative forms of penalties under Code §§ 6662 and 6662. *Id.* at ¶¶ 3–4.

KPF is a limited liability company organized in Delaware. *Id.* at ¶ 5. KPF and the other LLCs, including LPF and Nebraska Partners Fund, LLC ("NPF"), were formed and operated to generate profits for the partners from their investments. *Id.* at ¶ 2. KPF is now dissolved and does not have a principal place of business, but any business of KPF for the 2001 tax year was conducted by LPF. Id. The members of KPF for the tax periods in issue are: 1) LPF; and 2) Delta Currency Management Company ("Delta"), a Delaware corporation with a principal office in New York, New York. *Id.*

In the Complaints, KPF asserts that venue is proper in the Middle District of Florida, Fort Myers Division, pursuant to 29 U.S.C. § 1402(c) and 26 U.S.C. § 6226. *Id.* at ¶ 8. The IRS contends that venue is not proper in this District, but rather, in New Jersey (Dkts. 29, 54, p. 1).

## II. *FACTS*

LPF and NPF are asset-management companies (Dkt. 41, ¶ 11). Raghunathan Sarma ("Sarma") holds over 99% of direct ownership interest in LPF and NPF, and since December 2001, he has made the major business and investment decisions for these companies. (Dkt. 41, ¶ 10). Sarma also owns 100% of Sarma Administrative Services, Inc., which for all of 2010, held the remaining interest in NPF and LPF. *Id.* at ¶ 14.

### A. Sarma's Connection to Florida

Sarma is a retiree who travels frequently and has owned at least twelve homes throughout the world (Dkt. 41, ¶¶ 3–5, 16). Among these homes, Sarma purchased a condominium, Unit 328C, in Sanibel, Florida with his former spouse, Gaile Sarma, in the 1990s. *Id.* at ¶ 7. They also purchased other units in the same complex during that time. Id. Although the particular unit in which he resided changed over time because Sarma bought and sold various units within the complex, since the mid–1990s, Sarma has considered his home to be 200 Periwinkle Way in Sanibel, Florida. *Id.* at ¶ 8. As of March 2010, when this action was commenced, Sarma's primary residence was 200 Periwinkle Way, Unit 328C, Sanibel, Florida. *Id.* at ¶ 3. Sarma has a Florida Driver's license which reflects this Sanibel address. Id. He is also registered to vote in Florida. *Id.* at ¶ 6.

Sarma's ex-wife received title to the condo, Unit 328C, as part of a marital settlement agreement in 2005 (Dkt. 29, Ex. 5, p. 10; Dkt. 41, ¶ 16). As such, Sarma does not hold legal title to Unit 328C but has unfettered access to the property (Dkt. 41, ¶ 17). Sarma and Gaile agreed that Unit 328C would remain his primary residence until he purchased another residence in Florida. *Id.* at ¶ 18. Additionally, Sarma is responsible for all expenses and improvements for this and other properties that were a part of the settlement agreement. *Id.* at ¶¶ 16–17. No rental payments were made for the time that Sarma occupied the condo (Dkt. 29, Ex. 1, p. 17). Sometime after the summer of 2010, Sarma moved to Miami, Florida (Dkt. 41, ¶ 48).

### B. Sarma's Connection to New Jersey

Prior to moving to Florida, Sarma lived in New Jersey (Dkt. 41, ¶ 24). Sarma still

has a home in Montclair, New Jersey located at 57 Undercliff Road. *Id.* at ¶¶ 28, 30. From 2008 to 2010, Sarma's New Jersey home was undergoing renovations and was uninhabitable. *Id.* at ¶ 31. Despite his frequent travels and relocation to Florida, Sarma still maintains relationships with his doctors and other professionals in New Jersey. *Id.* at ¶ 27. Sarma also employed individuals, such as a housekeeper and an accountant, to handle matters relating to his homes, to answer telephone calls, and to look at the bills and send them to Sarma's son for payments (Dkt. 29, Ex. 2, pp. 50–51, 53). These individuals work at Sarma's discretion. *Id.*

### C. Business Matters

LPF's principal place of business as listed in the Membership Interest Purchase Agreement is 200 Periwinkle Way, Unit 328C, Sanibel, Florida (Dkt. 29, Ex. 4, p. 110; Dkt. 44, Ex. 11). This address is the same for NPF's principal place of business in its Membership Interest Purchase Agreement (Dkt. 29, Ex. 4, p. 111; Dkt. 44, Ex. 10). Similarly, the Articles of Incorporation for Sarma Administrative Services, Inc., reflect that its principal place of business is in Sanibel, Florida (Dkt. 44, Ex. 9). Sanibel, Florida was chosen as the principal place of business for LPF, NPF and Sarma Administrative Services because as the sole decision maker for these entities, Sarma intended to do all of his business out of his domicile (Dkt. 69, pp. 37–40). Although there is no deed, lease, or rental agreement for the Sanibel property for Sarma (Dkt. 29, Ex. 1, p. 17), Sarma has computers in an office in the Sanibel condo and does business from that location. (Dkt. 29, Ex. 2, p. 60; Dkt. 41, ¶ 23; Dkt. 69, pp. 37, 45–46). Sarma also

handles financial business matters online or on his international cell phone (Dkt. 41, ¶ 37). However, from 2008 through March 2010, Sarma does not recall making major business or investment decisions for NPF and LPF from his New Jersey home or the New Jersey home of his fiancee and current wife, Nataliya Pimpao. *Id.* at ¶ 28.

Sarma generally did not receive mail for LPF or NPF at the Florida address (Dkt. 69, pp. 109–110). Instead mail for these entities is sent to a company called Apex Partners in New York, or he views the bills for the companies online. Id. The IRS, however, sent correspondence to Sarma at both the Florida and New Jersey addresses (Dkt. 29, Ex. 2, p. 47; Dkt. 69, pp. 79–80). On December 11, 2009, the IRS sent Sarma information relating to NPF to the Florida address (Dkt. 44, Ex. 15).

### III. *LEGAL STANDARD* [2]

 A party must assert a defense of improper venue in its responsive pleading or by a motion. Fed.R.Civ.P. 12(b)(3). The plaintiff has the burden of showing that venue in the forum is proper. *Pinson v. Rumsfeld,* 192 Fed.Appx. 811, 817 (11th Cir.2006) (citing *Home Ins. Co. v. Thomas Industries, Inc.,* 896 F.2d 1352, 1355 (11th Cir.1990)). The plaintiff must present a *prima facie* showing of venue to prevent the dismissal or transfer of the case for improper venue. *Home Ins. Co.,* 896 F.2d at 1355. When affidavits conflict with the facts alleged in the complaint, the court is inclined to give greater weight to the plaintiffs version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff. *Id.*

Within 90 days after the day on which a notice of a final partnership administrative

---

**2.** The district courts have original jurisdiction and concurrent jurisdiction with the United States Court of Federal Claims over any civil

action against the United States filed under 26 U.S.C. § 6226. *See* 28 U.S.C. § 1346(e).

adjustment is mailed to the tax matters partner, the partner may file a petition for a readjustment of the partnership items with the United States District Court where the partnership's principal place of business is located. 26 U.S.C. § 6226(a)(2); *see Transcapital Leasing Assocs. 1990–II, L.P., et al. v. U.S.*, 398 F.3d 1317, 1320 (5th Cir.2005) ("Rather than dictating jurisdiction, the permissive 'principal place of business' clause of [Section] 6226(a)(2) points to the locale in which a suit may be brought."). "The principal place of a partnership's business for purposes of determining the appropriate district court in which a petition for a readjustment of partnership items may be filed is its principal place of business as of the date the petition is filed." 26 C.F.R. § 301.6226(a)–1.

### 1. Principal Place of Business under *Hertz*

In 2010, the Supreme Court outlined the test to be used to determine a corporation's principal place of business for purposes of diversity jurisdiction under 28 U.S.C. § 1332(c). *Hertz Corp. v. Friend, et al.*, ─── U.S. ───, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). The Court concluded that the principal place of business refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities," or the "nerve center." *Id.* at 1192. The nerve center is usually the headquarters if that is the actual center of direction, control and coordination. *Id.* However, the nerve center is not merely a mail drop box, a bare office with a computer, or the location of an annual executive retreat. *Id.* at 1195.

In holding that the "nerve center" test would be used to determine the principal place of business, the Supreme Court noted that there would be hard cases, especially when dealing with telecommuting and communications via the internet. *Id.* at 1194. Additionally, the Court empha-

sized that the test would produce results that would cut against the basic rationale of Section 1332. *Id.* However, the test "nonetheless points courts in a single direction, towards the center of overall direction, control, and coordination [of the corporation]." *Id.*

### 2. Principal Place of Business and Section 6226

*Uviado, LLC v. U.S.*, 755 F.Supp.2d 767 (S.D.Tex.2010) is instructive for purposes of determining the proper venue under Section 6226 when dealing with a limited liability company. In *Uviado,* the District Court found that venue was not proper in the Southern District of Texas. *Id.* at 769. Using the "nerve center" test, the Court found that venue was proper in the Central District of Illinois because the limited liability company's principal place of business was in that District. *Id.* Although the LLCs had an office in Houston, Texas, the major decisions relating to the company came from the primary owner of the companies who lived in Illinois. *Id.* at pp. 774–77.

In *Uviado,* the partnerships leased physical space in Houston and retained a CPA to work from Houston. *Id.* at 784. The CPA, however, played a limited role because he had no decisionmaking authority in the substantive aspects of the partnerships' activities. *Id.* He did not decide when to withdraw money or deposit money. *Id.* He was not involved in any investment decision and had no authority over investments. *Id.* He also spent minimal time in the leased office in Houston. *Id.* Additionally, the mail that was received at the Houston office was forwarded to Illinois. *Id.* The Houston location was the location for administrative functions, such as gathering historical documents and filing tax returns. *Id.* at 785. In sum, the Houston office was more akin to a "drop

box" than a nerve center of the investment partnerships. *Id.* at 784.

Despite having the Houston office, which maintained some of the records of the partnerships, "the place where the decisions to direct, control, and coordinate the litigation, manage prior investments, and decide whether to make new investments—continued to be with [the decisionmaker] in Champaign–Urbana, Illinois." *Id.* at 785. An engagement letter for litigation was sent to Illinois, checks were paid from the Houston account using money wire-transferred from Illinois and some checks were written on the account from Illinois. *Id.* The decisionmaker also received and reviewed investment statements and litigation documents in Illinois. *Id.* As such, venue was proper in the Central District of Illinois and not the Southern District of Texas.

Because there is very little case law that addresses the determining factors of a principal place of business for a partnership under Section 6226, the Court looks to *Hertz* and *Uviado* in considering whether the principal place of business sub judice is in New Jersey or the Middle District of Florida.

## IV. *ANALYSIS*

■ The IRS argues that the principal place of business of KPF,[3] via LPF, is in New Jersey. To support this assertion, the IRS contends that Sarma has been the "nerve center" of LPF and NPF since December 2009 (Dkt. 37, p. 17). The IRS argues that although Sarma states that his home is in Sanibel, there is no indication of his presence in Sanibel during the year

preceding the filing of the complaints or that he made decisions relating to the company in Sanibel. Id.; Dkt. 48, p. 4. The IRS notes that based on a marital settlement agreement with his ex-wife, Sarma did not have a right to occupy the condominium that he claimed was his residence (Dkt. 48, p. 3). Additionally, Sarma made several credit card charges in New Jersey during the year preceding the commencement of this action and renovated his house in New Jersey during this time period (Dkt. 37, p. 17). The IRS further contends that Sarma held out his residence to be the one in New Jersey. *Id.*

In response to the motion to transfer, KPF contends that as of March 2010, it had a strong connection with Florida, as its two partners, Sarma and Sarma Administrative Services, Inc.,[4] were located in Sanibel, Florida (Dkt. 40, p. 5). To support this argument, KPF notes that: 1) the documents of LPF and NPF state that their principal place of business is in Sanibel, Florida, *id.* at p. 7; 2) Sarma has an office in the condo in Sanibel, *id.* at p. 8; and 3) Sarma's ex-wife testified that the condo is Sarma's residence, *id.* at pp. 11–12. Additionally, KPF notes that the IRS's physical living standard is not supported by case law (Dkt. 40, pp. 13–14; Dkt. 51, pp. 2–3). KPF rebuts the IRS's arguments that Sarma resided in New Jersey by noting that: 1) Sarma was renovating the New Jersey home in addition to other homes[5] at the time; 2) Sarma's fiancee, ex-wife and other family members used Sarma's credit cards in New Jersey; and 3) Sarma responded to all correspondence electronically despite the fact that bills may have been sent to his New Jer-

---

3. The Eleventh Circuit has not spoken directly to the issue of determining the principal place of business for a dissolved limited liability company.

4. Sarma owns all of the stock in Sarma Administrative Services, Inc. and serves as the

president and treasurer of the company (Dkt. 32, Ex. 1; Dkt. 44, Ex. 1; Dkt. 69, p. 76).

5. Sarma has owned at least twelve homes (Dkt. 41, ¶ 16).

sey home (Dkt. 40, pp. 14, 18–19). Finally, KPF emphasizes that the IRS did not ask Sarma if he made any business decisions in New Jersey. *Id.* at pp. 19–20.

The Court now considers various factors noted by *Hertz* and *Uviado* in determining the principal place of business for a company under Section 6226.

### A. Type of Business

LPF and NPF are asset-management companies with diversified portfolios of investments, including hedge funds, private equity, and Florida real estate (Dkt. 40, ¶ 11). LPF owns a multi-million dollar real estate development in Vero Beach, Florida and a multi-million dollar rental condominium in Miami, Florida. *Id.* at ¶ 12. The business of these companies involves capital investments, as opposed to an active business. This factor does not weigh in favor of New Jersey as the location of the principal place of business. *See Peat Oil and Gas Assocs., et al. v. Comm'r of Internal Revenue,* 1993 WL 95592, at *12 (U.S.Tax Ct.1993) ("[T]he business of these partnerships is managing assets.... In cases involving such investment partnerships, the principal place of business is not where the property is located but where decisions are made."); *compare C.I.R. v. Soliman,* 506 U.S. 168, 175, 113 S.Ct. 701, 121 L.Ed.2d 634 (1993) ("A business location where [business] contacts occur has sometimes been called the 'focal point' of the business and has been previously regarded by the Tax Court as conclusive in ascertaining the principal place of business.").

### B. Physical Address

In business documents, LPF's principal place of business is 200 Periwinkle Way, Unit 328C, Sanibel, Florida (Dkt. 29, Ex. 4,

p. 110). This address is the same for NPF's principal place of business. *Id.* at p. 111. There is no deed, lease, or rental agreement for this Sanibel property in the name of LPF, NPF, or Sarma (Dkt. 29, Ex. 1, p. 17). No rental payments were made for the time that Sarma occupied the condo. Id. Gaile Sarma, Sarma's ex-wife, received title to the condo as part of the Marital Settlement Agreement in 2005 (Dkt. 29, Ex. 5, p. 10). However, Sarma's ex-wife testified that the condo being in her name is merely a legal formality, and she believes the condo is Sarma's (Dkt. 33–1, pp. 30, 34).

Additionally, Sarma has computers in his office at the condominium in Sanibel and does business from that office. (Dkt. 29, Ex. 2, p. 60; Dkt. 69, pp. 37, 45–46).[6] Sarma did not work out of an office in his home in New Jersey from March 2009 to March 2010 (Dkt. 69, p. 46). This information weighs against a finding that New Jersey is the principal place of business.

### C. Executive Decisions

Sarma testified that he chose the Sanibel address as the principal place of business because he lives "at that address and [is] the sole owner and decision-maker of all the activities of Lincoln Partners Fund, LLC and Nebraska Partners...." (Dkt. 29, Ex. 4, pp. 108–109; Dkt. 29, Ex. 2, p. 45; Dkt. 69, pp. 37–38). Sarma does not recall making any major business or investment decisions for LPF or NPF in his New Jersey home (Dkt. 40, ¶ 28; Dkt. 69, p. 57). Sarma handles financial business matters online or on his international cell phone (Dkt. 40, ¶ 37).

Sarma also conducted meetings with his two sons, his advisor from Switzerland and his lawyer between March 2009 and March 2010 (Dkt. 69, p. 41). Each month, they

---

**6.** Sarma also has computers and office related equipment in London, New York and To- ronto (Dkt. 69, p. 46).

would meet for about two hours to discuss the global investment climate and the exact nature of their investments. *Id.* at pp. 41–42. During these meetings, they would decide what should be done and come to an agreement. *Id.* Sarma would then sign off on the instructions for the companies. *Id.* These meetings often took place in New York, where his sons live, and sometimes in London or Switzerland. *Id.* at 43. Although he would consult with these individuals regarding the investments, Sarma was still the sole decisionmaker for all of the companies. *Id.* at p. 41. No meetings were held in New Jersey from March 2009 through March 2010. *Id.* at 43. This factor weighs against a finding that New Jersey is the principal place of business.

### D. Bills and Payments

Sarma states, "[F]or a long time, Marika [Villik], my housekeeper [in New Jersey] . . . was the central point for receiving all the documents for all my entities. . . . So even though all my bills [were] paid there electronically, the address recorded on all these bills [was] kept as 57 Undercliff Road [in New Jersey], whether they [were] from London or anywhere" (Dkt. 29, Ex. 2, p. 50). Sarma also employed Anita Rutkowska in New Jersey. *Id.* at p. 51. Rutkowska would answer telephones, coordinate bills, send bills to Sarma's son who is now in charge of payments, and perform other-household related activities. Id. Sarma testified that the assistants who worked out of the Undercliff residence in New Jersey did not work for NPF or LPF (Dkt. 69, p. 103). Sarma also employed Richard Litwinka, an accountant, who coordinated all activities among his homes. (Dkt. 29, Ex. 2, p. 53). Litwinka is based in New Jersey. Id. Additionally, Sarma employed an accounting firm, which is located in Fairfield, New Jersey (Dkt. 69, pp. 76–77). This accounting firm handled Sarma's individual income tax returns. *Id.* at p. 77.

There is no indication in the record that Sarma had anyone assisting him in Florida with his businesses. Indeed, Sarma testified that there are no employees of LPF or NPF (Dkt. 69, p. 99). Additionally, there is no indication that any of these individuals in New Jersey had any authority to make any decisions relating to the businesses or that they did anything more than personal work for Sarma or administrative work for the businesses at Sarma's direction. *See Uviado,* 755 F.Supp.2d at 784–85. Therefore, this factor weighs against a finding that the principal place of business is in New Jersey.

### E. Mail

The Internal Revenue Service corresponded with Sarma at both the Florida address and New Jersey address (Dkt. 29, Ex. 2, p. 47; Dkt. 69, pp. 79–80). On or about December 11, 2009, the IRS sent Sarma correspondence relating to NPF to the Sanibel address (Dkt. 44, Ex. 15).

Sarma testified that he generally does not receive mail for LPF or NPF at the Sanibel address (Dkt. 69, pp. 109–110). Instead mail for these entities is sent to a company called Apex Partners in New York, or he views the bills for the companies online. Id. This factor weighs against a finding that the principal place of business is in New Jersey.

### F. Retention of Documents

Sarma testified that the documents relating to his companies are maintained online (Dkt. 29, Ex. 2, pp. 45–46; Dkt. 69, pp. 45–46, 102). Sarma also stated that there are hard copies of the documents maintained in Switzerland (Dkt. 69, p. 102). Sarma's attorney, Dennis Sabourin, serves as the vice president of Sarma Administrative Services, Inc. (Dkt. 69, p. 76). The record indicates that Sabourin may retain hard copies of certain documents relating to LPF and NPF in New Jersey (Dkt. 29,

Ex. 2, p. 45; Dkt. 44, Ex. 10, p. 11; Dkt. 44, Ex. 11, p. 11). Despite the fact that some business documents may be located in New Jersey, this factor alone does not support a finding that the principal place of business is in New Jersey.

### V. *Conclusion*

The Court finds that KPF made a *prima facie* showing that venue is proper in this District. The Middle District of Florida, Fort Myers Division, is the federal judicial district where the principal decision maker, Sarma, resided, and from where he made decisions about the Plaintiffs' business during the year preceding the filing of these actions. The IRS has not established that venue is proper in the District of New Jersey. Although there were several individuals in New Jersey who assisted Sarma in handling personal and business matters relating to his properties, there is no evidence that Sarma conducted any business in New Jersey or controlled and/or directed the investments of the businesses in New Jersey during the relevant time period. Based on the testimony and evidence admitted during the evidentiary hearing, memoranda and supporting documents, deposition excerpts, and declarations of record, the Court finds that, as of March 9, 2010, the principal place of business for LPF and NPF is not in New Jersey, but rather, the Middle District of Florida. After giving greater weight to the Plaintiff's version of the jurisdictional facts and construing such facts in the light most favorable to the Plaintiff, the Government's Motion to Transfer based on improper venue must be denied.

Accordingly, it is hereby **ORDERED** that the Motion to Transfer (Dkt. 29) is **DENIED.**