[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2006
THOMAS K. KAHN
CLERK

No. 05-16548
Non-Argument Calendar
_____

D. C. Docket No. 04-00076-CV-JTC-3

CHARLES A. PINSON, JR.,

Plaintiff-Appellant,

versus

DONALD RUMSFELD, Secretary of the Department of Defense,
FRANCIS J. HARVEY, Secretary of the Department of the Army,
BILL R. WAGONER,
JERRY PORTER,
CHARLIE L. CORNETT, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 18, 2006)**

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Charles A. Pinson, Jr., ("Pinson"), proceeding pro se, appeals the district court's dismissal of his suit alleging discrimination and other constitutional violations. The district court did not abuse its discretion in finding that Pinson's claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), were filed in the improper venue and that the interests of justice did not warrant a transfer to another district. The district court also did not err in finding that Pinson's claims of civil rights violations under 42 U.S.C. § 1985 and constitutional claims regarding his federal employment were precluded and that Pinson failed to establish that the court had personal jurisdiction over the individual defendants named in his First Amendment claims. We AFFIRM.

## I. BACKGROUND

On 19 July 2004, Pinson filed a pro se complaint, naming four defendants: (1) Donald Rumsfeld, Secretary of the Department of Defense ("DOD"); (2) William Cohen, former Secretary of the DOD; (3) Louis Caldera, Secretary of the Department of the Army ("DA"); and (4) Leslie Brownlee, acting Secretary of the DA. The complaint was filed on a "Title VII Complaint" form but a handwritten note at the top of the first page indicates that it was "not primarily a Title VII case" but was primarily filed to address violations of 42 U.S.C. § 1985, and the First,

2

Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. R1-3 at 1. Pinson stated that the defendants discriminated against him because of his race, religion, gender, and his mixed-race marriage by failing to promote him and terminating his employment. Id. at 2. He did not allege any facts regarding the district court's personal jurisdiction over the defendants or that they were Georgia residents. Simultaneously with his complaint, Pinson filed an "amendment" and a document entitled "Initial Disclosure" with appendix; in both the amendment and the disclosure, he incorporated additional arguments. Id. at 3; R1-4. In the amendment, he claimed that he was unlawfully dismissed from employment based on the pretextual reason that he was unable to hold a security clearance. R1-3, Amendment at 1. He asserted that various military personnel and other government officials unlawfully denied him a security clearance and discriminated against him in his performance reviews because of his race, gender, and marital status; confiscated his copyrighted property; and refused to hire him for many positions for which he was qualified. R1-3, Amendment at 1-4, 8-15. He alleged that his supervisors discriminated against him by requesting that he marry a Filipino woman. Id. at 5-6.

In the "Initial Disclosure," he claimed that the defendants: (1) violated the First Amendment by classifying portions of his EEO complaint; (2) violated the

3

Fifth Amendment by denying him access to the courts; (3) violated the Fourth Amendment by seizing his computer and his copyrighted documents; (4) violated 42 U.S.C. § 1985 and the Fifth Amendment by conspiring to alter a document in order to show that he had disobeyed the orders of his superior, which caused the suspension of his security clearance; (5) violated § 1985 and the Fourteenth Amendment by conspiring to pressure him to marry a Filipino woman; (6) violated § 1985, Title VII, and the First, Fourth, Fifth, and Fourteenth Amendments by conspiring to revoke his security clearance, via coded messages; (7) violated § 1985 by conspiring to discriminate against him by refusing to hire him and by giving him inaccurate performance evaluations; (8) conspired under § 1985 and violated his Fifth and Fourteenth Amendment rights by sabotaging his military intelligence project when he refused to marry one of the defendant's Jewish daughter; and (9) violated his First Amendment rights by refusing to conduct a pre-publication review of his book, entitled Depraved Indifference. Id. at 2-8.

Pinson was granted leave to amend his complaint to add additional defendants. R1-10 at 1-2. He subsequently amended his complaint, adding as defendants Bill R. Wagoner, Jerry Porter, Charlie L. Cornett, George W. Reyes, Paul J. Mason, Maria R. DiMarco, Dean P. Quain, Thomas D. Dale, Alita A. Farr,

4

and Robert Lasky. R1-14.[1] Pinson alleged no facts regarding the district court's personal jurisdiction over these defendants and did not allege that defendants were Georgia residents.

The original defendants[2] moved to dismiss, arguing first that Pinson's Title VII claims should be dismissed for improper venue under Title VII and that the interests of justice did not warrant a transfer of Pinson's Title VII claims to another judicial district, because Pinson had waived his right to pursue any discrimination and retaliation claims in the Northern District of Georgia by appealing the Merit System Protection Board's ("MSPB's") adverse ruling in his case to the Federal Circuit. They also alleged that, to the extent Pinson sought to sue the defendants in their official capacities, his claims were barred by the doctrine of sovereign immunity. To the extent Pinson sought to sue the defendants in their individual capacities, the defendants claimed that Pinson had failed to plead an action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,

---

[1] Pinson's claims against the original defendants and the newly-named defendants were identical. The same analysis thus applies to his claims against all of the named defendants.

[2] The motion to dismiss was filed on behalf of Rumsfeld, Cohen, Caldera, and Dr. Francis J. Harvey, the acting Secretary of the Department of the Army. R1-19, Memorandum at 1, n.1; 2 at n.2. At that time, the defendants named in the amended complaint had not been served with the complaint. Id. After the magistrate judge recommended dismissal of Pinson's suit in its entirety, the remaining defendants moved to dismiss the complaint, incorporating by reference the other defendants' motion to dismiss and the magistrate judge's report and recommendation. R16-73 at 1-2. The district court granted both sets of defendants' motions to dismiss all of Pinson's claims. R16-76 at 2.

403 U.S. 388, 91 S. Ct. 1999 (1971), and that any potential <u>Bivens</u> claims that Pinson could bring were precluded by the comprehensive statutory scheme set forth in the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101, <u>et</u> <u>seq.</u> The defendants further noted that, because security clearance issues are not reviewable by the judiciary, to the extent Pinson alleged that the defendants violated § 1985 by denying him security clearance, his complaint failed to state a claim. The defendants argued that Pinson's other § 1985 claims were pre-empted by Title VII and the CSRA and that Pinson had not established that the district court had personal jurisdiction over certain defendants.

As an exhibit, the defendants attached the "Statement Concerning Discrimination" that Pinson had submitted with his appeal of the MPSB's decision to the Federal Circuit and cited <u>Pinson v. Department of the Army</u>, No. 99-3407, 2000 WL 565517, at *1 (Fed. Cir. May 10, 2000) (per curiam) (stating that "Pinson waived any claim of discrimination when he submitted his Statement Concerning Discrimination pursuant to Federal Circuit Rule 15(c)."). R1-19 at 8; <u>Id.</u>, Exh. A. On the form, Pinson had checked the box indicating that "[n]o claim of discrimination by reason of race, sex, age, national origin, or handicapped condition" would be raised in his appeal. <u>Id.</u>, Exh A at 1.

Pinson filed several responses to the defendants' motion to dismiss, which

6

were stricken because of their excessive length and non-compliance with court rules. Pinson submitted multiple volumes of his personal copies of his employment records and, in his remaining response to the defendants' motion to dismiss, Pinson argued that the district court was the proper venue for his claims because he had submitted his employment records to the Northern District of Georgia. R3-34, Memorandum at 6; see also volumes R4-R9. Pinson further argued that he did not waive his right to pursue his discrimination claims by appealing the MSPB decision to the Federal Circuit, because "the MSPB decision was based on Fraud" and various constitutional violations, and the Federal Circuit decision only pertained to the narrow issue of the revocation of his security clearance and not his allegations of discrimination and retaliation. R1-34, Memorandum at 1, 3-4, 12. He argued that the MSPB did not have jurisdiction to hear his constitutional and civil rights claims and that, because the MSPB and the Federal Circuit had refused to adjudicate his constitutional and civil rights claims, the defendants could not raise any Bivens "hurdles" at this point. Id. at 7.

As to sovereign immunity, Pinson alleged that sovereign immunity was waived with respect to his claims because the "EEOC issued . . . three 'Final Decisions' that granted [him] the 'Right to File a Civil Action.'" Id. at 2; see also id. at 19-20. Pinson argued that personal jurisdiction over the defendants was

proper under the Georgia Long-Arm Statute, O.C.G.A. § 9-10-91, because the DOD and the DA both maintained military bases and transacted business within Georgia. Pinson stated that the defendants "were acting outside of their official capacity" in violating his rights, and, thus, he claimed, he could proceed with a Bivens action.

The magistrate judge recommended dismissal of Pinson's complaint. R13-63 at 21. First, with respect to Pinson's Title VII claims, the magistrate judge noted that Pinson was not employed by the Army in Georgia and that Pinson had not met his burden to show that his employment records regarding the alleged adverse actions were maintained in Georgia or that, but for the alleged unlawful employment practices, he would have worked for the Army in Georgia. The magistrate judge further noted that Pinson's personal copy of his employment records, which he claimed he maintained in Georgia, did not satisfy Title VII's venue provision requiring that the employment records be officially maintained and administered by the employer in the district. To the extent Pinson argued that the appropriate venue should not be dictated by his Title VII claims, but by his constitutional and civil rights claims, the magistrate judge concluded that the statutory language of Title VII indicated that the districts detailed in the statute were intended to be the exclusive venues for Title VII claims.

The magistrate judge further concluded that, under 28 U.S.C. § 1406(a), it would not be in the interests of justice to transfer Pinson's Title VII claims to a proper forum, because Pinson waived his right to pursue his Title VII claims in any district court by appealing the MSPB's decision to the Federal Circuit and affirmatively indicating on the "Statement Concerning Discrimination" that he did not seek to pursue any discrimination claims. The magistrate judge rejected Pinson's argument that the district court should hear his claims because the Federal Circuit did not address them, as the Federal Circuit did not have the jurisdiction to entertain his discrimination claims, and Pinson waived any such claims by appealing to that court. Moreover, the magistrate judge determined that the interests of justice did not warrant a transfer of Pinson's claims because the adverse employment action he challenges--the revocation of his security clearance--is non-justiciable. Finally, the magistrate judge noted that Pinson had failed to state a claim because Title VII does not protect against discrimination based solely on marital status. Thus, the magistrate judge recommended the dismissal of Pinson's Title VII claims. Id. at 13.

With regard to Pinson's § 1985 claims, the magistrate judge concluded that, to the extent Pinson sought to sue the defendants in their official capacities, the doctrine of sovereign immunity applied, and the United States was immune from

9

suit absent an express, unequivocal waiver of immunity. To the extent Pinson sought to bring the § 1985 claims against the defendants in their individual capacities, the magistrate judge concluded that, although <u>Bivens</u> permits suits seeking money damages from federal officers acting in their individual capacities, the CSRA offers an alternative mechanism for resolving Pinson's claims and preempts job-related <u>Bivens</u> actions by federal employees. Thus, the magistrate judge recommended the dismissal of all of Pinson's § 1985 claims. <u>Id.</u> at 16-17.

With regard to Pinson's constitutional claims, the magistrate judge first recommended the dismissal of Pinson's Fourteenth Amendment claim, because the Fourteenth Amendment protects against certain actions by the states and does not apply to the federal government or its agencies. As to Pinson's First, Fourth, and Fifth Amendment claims, the magistrate judge noted that the defendants had not expressly waived their sovereign immunity, and, thus, the claims against the defendants in their official capacities should be dismissed. Moreover, to the extent Pinson's constitutional claims against the defendants in their individual capacities arose out of his federal employment, the magistrate judge concluded the claims were precluded by the CSRA. Finally, the magistrate judge noted that Pinson's First Amendment claim against the defendants in their individual capacities pertained to events that occurred after his termination from the Army, and, thus,

was not preempted by the CSRA. Nevertheless, the magistrate judge determined, the First Amendment claim should be dismissed because: (1) Pinson had not alleged facts demonstrating that any of the defendants were personally involved in the pre-publication review of his book; (2) Pinson had not established personal jurisdiction over the individual defendants in their individual capacities; and (3) Pinson had not properly served the defendants with his complaint. Id. at 21.

After considering Pinson's objections to the magistrate's report and recommendation, the district court adopted the report and recommendation and issued a judgment dismissing the action in its entirety. R16-76, 77. The district court denied Pinson's motion for reconsideration and Pinson timely appealed that order.

## II. DISCUSSION

A. Pinson's Title VII Claims

1. Improper venue

On appeal, Pinson asserts that the district court erred and committed manifest injustice by concluding that his employment records were not maintained in the state of Georgia. He notes, for the first time on appeal, that one document within his employment records was forwarded to a Georgia address, which shows that his files were maintained in Georgia. Moreover, he alleges, even if the district

11

court was not the proper forum for his Title VII claim, his constitutional and civil rights claims should not be preempted by Title VII venue concerns. He also maintains that venue can be established in Georgia under 28 U.S.C. § 1391, the general federal venue statute.

We review the dismissal of a lawsuit for improper venue for abuse of discretion. Home Ins. Co. v. Thomas Indus., Inc., 896 F.2d 1352, 1355 (11th Cir. 1990). Title VII's venue provision states, in relevant part, that the appropriate venue for Title VII claims is:

> any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3). The venue provisions of § 2000e-5(f)(3) were intended to be the exclusive venue provisions for Title VII employment discrimination actions and that the more general provisions of § 1391 are not controlling in such cases. Stebbins v. State Farm Mut. Auto. Ins. Co., 413 F.2d 1100, 1102-03 (D.C. Cir. 1969) (per curiam). The plaintiff has the burden of showing that venue in the forum is proper. See Home Ins. Co., 896 F.2d at 1355.

In this case, the district court did not abuse its discretion by determining that

12

Pinson's claims were filed in an improper venue. Pinson did not introduce any evidence demonstrating, and, thus, did not meet his burden to establish, that the Northern District of Georgia was the location where his personnel records were maintained by an official custodian, where the alleged adverse employment actions occurred, or where he would have worked, but for an unlawful employment practice. Although Pinson argues that he maintained his personnel records in Georgia, Pinson's records are not officially administered here, for purposes of Title VII's venue provisions, § 2000e-5(f)(3). Moreover, because Title VII claims are governed by § 2000e-5(f)(3), and these venue provisions set forth the exclusive venues for Title VII claims, the proper venue for Pinson's other claims is irrelevant to this inquiry.

2. Interests of justice

Pinson argues on appeal that he did not waive his right to pursue his Title VII claims in the district court by appealing the MSPB's decision to the Federal Circuit. He alleges that he did not check the section of the "Statement Concerning Discrimination" indicating that he waived his discrimination claims. He contends that the MSPB expressly waived its jurisdiction to hear his discrimination claims, and, thus, he could not have waived the claims by appealing the MSPB's decision. Pinson maintains that not all Title VII claims related to security clearance

13

revocation are non-justiciable. He also argues that, because the Federal Circuit did not have subject-matter jurisdiction to hear his discrimination claims, he should be permitted to bring his suit before the district court and that he did not intend to waive his discrimination claims by indicating on his "Statement Concerning Discrimination" that he had no such claims.

"[T]he decision whether to transfer a case is left to the sound discretion of the district court and is reviewable only for an abuse of that discretion." Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 985 (11th Cir. 1982). Under § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a). We have found such transfers required only in the limited situation when a party was directed by a government official to file in the incorrect court and the case was time-barred by the time it was dismissed. ITT Base Servs. v. Hickson, 155 F.3d 1272, 1276 (11th Cir. 1998); Slatick v. Director, OWCP, U.S. Dept. of Labor, 698 F.2d 433, 434 (11th Cir. 1983) (per curiam).

Generally, a federal employee seeking review of certain specified adverse employment actions, or those employment actions in conjunction with his discrimination claims, must proceed under the rules and regulations enacted

14

pursuant to the CSRA. See Doyal v. Marsh, 777 F.2d 1526, 1535-36 (11th Cir. 1985); McAdams v. Reno, 64 F.3d 1137, 1141-42 (8th Cir. 1995); 5 U.S.C. §§ 7701(a), 7702(a)(1). The CSRA provides for the creation of the MSPB, an "independent, quasi-judicial federal administrative agency established to review civil service decisions." McAdams, 64 F.3d at 1141; see 5 U.S.C. § 1204.

The MSPB has jurisdiction to entertain specific adverse employment actions affecting federal employees, including demotions, suspensions, and terminations. See Chappell v. Chao, 388 F.3d 1373, 1375 (11th Cir. 2004) (citing 5 U.S.C. § 7512). A federal employee who is terminated and also alleges discrimination in violation of Title VII presents a "mixed case" that may be appealed directly to the MSPB. Id.; see 5 U.S.C. § 7702(a)(1)(A) and (B)(i). "Although the MSPB does not have jurisdiction over discrimination claims that are not related to adverse actions, it can entertain appeals in 'mixed cases,' where an employee alleges a Title VII violation in relation to one of the specified adverse employment actions." Chappell, 388 F.3d at 1375.

Once the MSPB enters its final order with respect to a mixed case, the federal employee is advised that he can (1) waive the discrimination claims and file a petition for review of the adverse employment action in the Federal Circuit; (2) obtain additional administrative review of his discrimination claims in the EEOC;

15

or (3) file a complaint in an appropriate district court raising both his discrimination and adverse employment claims. 5 U.S.C. §§ 7702(a)(3), 7703(a) and (b). If the employee elects to file a petition for review in the Federal Circuit, he must complete a "Statement Concerning Discrimination," pursuant to Fed. Cir. Loc. R. 15(c). Local Rule 15(c) sets forth the contents of the form that the petitioner must complete, including an acknowledgment that he either abandons any claims of discrimination or that such claims are not among those for which he is seeking review. Fed. Cir. Loc. R. 15(c)(1)(A)(i), (ii); see R1-19 at 8, Exh. A. In Chappel, we explained that

> a federal employee who wants to preserve both discrimination and non-discrimination claims after a final order from the MSPB must do so by bringing all his related claims in federal district court. . . . [A]n employee who chooses to appeal an adverse action to the Federal Circuit waives his right to pursue not only any discrimination claims he waived before the MSPB, but also any other discrimination claims arising out of the same facts.

388 F.3d at 1378.

In this case, the district court did not abuse its discretion in concluding, under 28 U.S.C. § 1406(a), that the interests of justice did not warrant the transfer of Pinson's claims to another judicial district. It is undisputed that Pinson appealed the MSPB's adverse decision to the Federal Circuit. By electing to appeal the decision to the Federal Circuit, Pinson waived his ability to pursue the

16

discrimination claims he raised before the MSPB and any other discrimination claims arising from the same facts to any federal district court. See Chappell, 388 F.3d at 1378. Because there is no federal district court in which Pinson could bring his Title VII claims, the district court did not err in determining that the interests of justice did not warrant a transfer of the suit to another judicial district.

B. Pinson's 42 U.S.C. § 1985 Claims

Pinson states that his § 1985 claims are premised on the defendants' violations, acting in their individual capacities, of his First, Fourth, Fifth, and Fourteenth Amendment rights. He maintains that Title VII does not preempt his § 1985 claim, and alleges that they cannot claim sovereign immunity because the majority of the defendants were acting outside of their official capacities at one time or another. He also argues that he satisfied any sovereign immunity concerns when he received right-to-sue letters from the EEOC.

We review the district court's grant of a motion to dismiss de novo, accepting all allegations in the complaint as true. Kyle K. v. Chapman, 208 F.3d 940, 942 (11th Cir. 2000). A district court may dismiss a complaint for failure to state a claim only when it appears beyond a doubt that a pro se litigant can prove no set of facts that would entitle him to relief. See Leal v. Georgia Dep't of Corr., 254 F.3d 1276, 1280 (11th Cir. 2001) (per curiam) (citation omitted).

17

The elements of a § 1985 action are:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Park v. City of Atlanta, 120 F.3d 1157, 1161 (11th Cir. 1997) (per curiam). A cause of action under § 1985 "may not be invoked to redress violations of Title VII." See Great Am. Fed. Savings & Loan Assoc. v. Novotny, 442 U.S. 366, 378, 99 S. Ct. 2345, 2352 (1979). The exclusive judicial remedy for a discrimination claim in federal employment falls under Title VII. Brown v. Gen. Servs. Admin., 425 U.S. 820, 823, 835, 96 S. Ct. 1961, 1963, 1969 (1976).

In some instances, a plaintiff may seek money damages from a federal officer acting in his or her individual capacity by bringing a Bivens action. Bivens, 403 U.S. at 397, 91 S. Ct . at 2005. "A Bivens action is only permitted where 1) the petitioner has no alternative means of obtaining redress, and 2) there are no 'special factors counseling hesitation.'" Stephens v. Department of Health & Human Servs., 901 F.2d 1571, 1577 (11th Cir. 1990) (quoting Bivens, 403 U.S. at 396-97, 91 S. Ct. at 2005). We have also "recognized that the comprehensive statutory scheme established by Congress relating to federal employment (CSRA) precludes the maintenance of job-related Bivens actions by federal employees."

18

Id.

As an initial matter, Pinson states on appeal that he only seeks to sue the defendants for their violations of § 1985 in their individual capacities. Because Pinson did not challenge the district court's determination that the doctrine of sovereign immunity precluded his § 1985 claims against the defendants in their official capacities, he has abandoned his claim as to that issue. See Access Now, Inc. v. Southwest Airlines, Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled . . . that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Moreover, the district court properly dismissed Pinson's § 1985 claims against the defendants in their individual capacities. By attempting to sue federal officials in their individual capacities, Pinson seeks to bring a Bivens action. All of the § 1985 claims Pinson details in his complaint relate to his federal employment. See R1-3; R1-4 at 2-8. The CSRA provides a comprehensive statutory scheme for addressing Pinson's employment-related § 1985 claims, and the CSRA precludes employment-related Bivens actions by federal employees. Thus, the district court did not err in dismissing Pinson's § 1985 complaint for failure to state a claim.

C. Pinson's Constitutional Claims Against the Defendants in their Individual Capacities

19

Pinson argues that he did not need to satisfy Georgia's long-arm statute to establish the district court's personal jurisdiction over the defendants, because he was constitutionally only required to show that the defendants have requisite minimum contacts with the United States rather than the forum state. He explains, in great detail, why he did not properly serve the defendants with the complaint within the 120 days required by Federal Rule of Civil Procedure 4(m) but then also states that he did timely serve them. He contends that his constitutional rights cannot be preempted by Title VII and that sovereign immunity should not preclude his suit because the defendants acted outside of their official capacity in violating his rights.

The Supreme Court has held that a federal employee cannot maintain a cause of action against his supervisor for violations of his First Amendment rights, because such a claim is governed by CSRA procedural and substantive administrative provisions which establish effective remedies for constitutional violations by the government. Bush v. Lucas, 462 U.S. 367, 368, 385-86, 388-90, 103 S. Ct. 2404, 2406, 2415, 2417 (1983); see also Wells v. Federal Aviation Admin., 755 F.2d 804, 809-10 (11th Cir.1985) (applying same analysis in the context of a Fifth Amendment due process challenge); see also Gleason v. Malcom, 718 F.2d 1044, 1048 (11th Cir.1983) (per curiam) (applying same

20

analysis in the context of First, Fourth, and Fifth Amendment claims).

We review the district court's determination that it lacked personal jurisdiction over a party de novo. Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990). "When the district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over the nonresident defendant." Id. Determining personal jurisdiction is a two-step inquiry. Id. First, the court must determine whether the long-arm statute of the forum state permits the exercise of jurisdiction. Id. If the answer is yes, the court must then determine whether the exercise of jurisdiction satisfies the Due Process Clause of the Fourteenth Amendment. Id.

The Georgia Long Arm Statue allows Georgia courts to exercise personal jurisdiction over a nonresident if the defendant:

(1) Transacts any business within th[e] state;

(2) Commits a tortious act or omission within th[e] state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in th[e] state caused by an act or omission outside th[e] state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in th[e] state; or

(4) Owns, uses, or possesses any real property situated within th[e]

21

state.

O.C.G.A. § 9-10-91.

Pinson has abandoned his constitutional claims against the defendants in their official capacities, because he admits on appeal that the defendants were acting outside of their official capacities when they allegedly violated his constitutional rights, and he offers no argument with regard to the defendants' culpability in their official capacities. See also Access Now, Inc., 385 F.3d at 1330. Because Pinson alleges that the defendants acting in their individual capacities violated his constitutional rights, he is attempting to raise a Bivens claim. Pinson, however, is precluded from maintaining a Bivens action against the defendants for the alleged violations of his First, Fourth, and Fifth Amendment rights that stemmed from his employment with the federal government because of the comprehensive statutory scheme related to federal employment, the CSRA. See Stephens, 901 F.2d at 1577. Further, the district court correctly determined that Pinson's Fourteenth Amendment claims should be dismissed, because the Fourteenth Amendment applies only to states and state actors, not the federal government. See U.S. Const. amend. XIV, § 1 (providing that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.").

Pinson's remaining First Amendment claim against the defendants in their

individual capacities concerns the defendants' refusal to conduct a pre-publication review of his book and it arose after Pinson's federal employment was terminated. With regard to that claim, the district court properly determined that it lacked personal jurisdiction over the defendants. Pinson failed to meet his burden to establish that the district court had jurisdiction over the individual defendants. <u>See</u> <u>Cable/Home Commc. Corp.</u>, 902 F.2d at 855. Pinson misstates the test for personal jurisdiction when he alleges that he need only show that the defendants had minimum contacts with the United States. Although Pinson argued below that the DOD and DA both maintain a presence in Georgia, he did not allege, and the record does not reveal, that the district court could obtain jurisdiction over the individual defendants via the Georgia long-arm statute. The district court did not err in dismissing this claim for lack of personal jurisdiction.

### III. CONCLUSION

Pinson appeals the dismissal of his complaint alleging violations, under Title VII, 42 U.S.C. § 1985, and various constitutional amendments, primarily related to his federal employment. The district court did not abuse its discretion in determining that Pinson had filed his Title VII in the improper venue or that the interests of justice did not warrant a transfer to another judicial district. The district court did not err in dismissing his § 1985 claims or his constitutional claims

23

arising from his employment because the CSRA precluded these claims. The

district court also did not err in dismissing Pinson's First Amendment claim, which

did not involve his federal employment, because he did not establish that the

district court had personal jurisdiction over the individually named defendants.

The district court properly dismissed all of Pinson's claims, and we AFFIRM.

**AFFIRMED.**