**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1723**

PAULA C. ANGLES; DEBORAH COLLINS; ELIZABETH A. GARRICK; EDNA
A. BOLTON; SONYA LYNN ANGELL; CANDY S. DICKINSON; SHIRLEY K.
FRELIX; PAULA HENRY; SANDRA MANNON; KATHLEEN SHALLOW;
KIMBERLY VELLER; JUANEMA OGLE; LILLIAN LEWIS; TABITHA A.
KNIGHT; MARY PFEUFER; CARMEN GARCIA; APRIL WEBSTER; DAPHNE
M. ROBINSON; DESIREE LIGHTFOOT; CHASSIDY HAMILTON; FRIEDA
SCOTT-BUTTS; ARACELI REYES; BRENDA WILLIAMS; MARIA D.
GONZALEZ; CARLOTA RZUCEK; DARLENE R. MARTIN; CAROLYN SABO;
SHERRY L. ALLISON; REBECCA TYLER-MILLS; MICHELE L. WAHL;
MELINDA J. ANDERSON, on behalf of themselves and others
similarly situated,

               Plaintiffs – Appellants,

          v.

DOLLAR TREE STORES, INCORPORATED,

               Defendant – Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk. Jerome B. Friedman, Senior
District Judge. (2:09-cv-00486-JBF-FBS)

Argued: January 24, 2012          Decided: September 13, 2012

Before SHEDD, DAVIS, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion. Judge Shedd wrote the majority
opinion, in which Judge Diaz joined. Judge Davis wrote a
dissenting opinion.

**ARGUED:** Robert L. Wiggins, Jr., WIGGINS, CHILDS, QUINN & PANTAZIS, PC, Birmingham, Alabama, for Appellants. Kenneth Martin Willner, PAUL HASTINGS LLP, Washington, D.C., for Appellee. **ON BRIEF:** Gregory O. Wiggins, WIGGINS, CHILDS, QUINN & PANTAZIS, PC, Birmingham, Alabama, for Appellants. Barbara B. Brown, Carson H. Sullivan, PAUL HASTINGS LLP, Washington, D.C.; Beth Hirsch Berman, WILLIAMS MULLEN, Norfolk, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Paula Angles and other named plaintiffs (collectively "the Plaintiffs") in this proposed class action appeal the dismissal of their complaint as untimely. For the following reasons, we affirm.

I.

In 2008, the Plaintiffs filed an action against Dollar Tree Stores in the Northern District of Alabama alleging claims under the Equal Pay Act. Collins v. Dollar Tree Stores, Inc., 2:08-cv-1267 (Collins I).[1] Collins I is a collective class action alleging that Dollar Tree paid female managers less than their male counterparts. As part of the action, notices were sent to other female Dollar Tree store managers employed between 2006 and 2009. At the time Collins I commenced, 31 of the 34 named plaintiffs had discrimination charges pending with the Equal Employment Opportunity Commission (EEOC).[2] The EEOC sent right-to-sue letters to those named plaintiffs between November 6, 2008 and April 24, 2009.

---

[1] Cynthia Collins was originally the lead plaintiff in this action as well. Pursuant to a settlement agreement with Dollar Tree, she voluntarily dismissed her claims and Paula Angles became the lead plaintiff.

[2] Three of the named plaintiffs never filed an EEOC charge.

3

On February 4, 2009, 90 days after the first right-to-sue letters were mailed, the Plaintiffs moved pursuant to Federal Rule of Civil Procedure 15 to amend their complaint in Collins I to add sex discrimination claims under Title VII. Dollar Tree opposed the proposed amendment, arguing that proper venue for the Title VII claims was in Virginia, not Alabama.[3] On February 20, 2009, the Plaintiffs filed a pleading labeled "Consent to Severance and Reassignment of Title VII Claims," requesting that the Alabama district court sever the Title VII claims and assign them to another judge. The Plaintiffs noted that they moved to sever and reassign the Title VII claims rather than simply file a new complaint because "the defendant may then argue that the ninety day limitations period . . . expired before such re-filing." (J.A. 254). Thus, "[i]n order to avoid such a risk," the Plaintiffs "consent only to the Title VII claims at issue being severed and reassigned a new case number and judge." (J.A. 254).

On June 17, the Alabama district court held a hearing on the motion for leave to amend, noting that it was inclined to deny the motion as futile because venue was improper. The district court also noted that the motion for "Consent" was

---

[3] Earlier, Dollar Tree had unsuccessfully moved to transfer the Equal Pay Act claims to Virginia.

4

improper because, "[t]here's nothing for you to consent to unless I amend, unless I grant your motion for leave to amend, which, again, I'm inclined to deny." (J.A. 263). Failing to recognize the Alabama district court's signal about their need to file in the proper district, on July 9, the Plaintiffs filed another motion to amend the complaint. At this point, only 76 days had passed since the EEOC issued the April 24 right-to-sue letters.

On September 30, 2009, the Alabama district court denied the first motion for leave to amend as moot and the second motion for leave to amend as futile because of improper venue. The next day, the Plaintiffs filed a new complaint in the Eastern District of Virginia stating the same Title VII claims previously included in the proposed amended complaint in Collins I. Because the action was filed outside of Title VII's 90-day limitations period, the district court dismissed the complaint as untimely filed. In doing so, the court rejected the Plaintiffs' argument that moving to amend their complaint in Collins I tolled Title VII's statute of limitations and noted that the case was not one that "turns on a plaintiff missing the filing deadline by a few days." (J.A. 508). The Plaintiffs filed a Rule 59(e) motion to alter or amend the order, which the district court denied. The Plaintiffs then filed this appeal.

II.

On appeal, the Plaintiffs argue that the district court erred in finding that their Title VII claims are time-barred. We review the district court's 12(b)(6) dismissal de novo, Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), and its denial of a Rule 59(e) motion for abuse of discretion, Orem v. Rephann, 523 F.3d 442, 451 n.2 (4th Cir. 2008).

A.

At the outset, we note that the Plaintiffs do not dispute that their complaint was filed well outside the relevant limitations period. Title VII requires that aggrieved persons file a civil action within 90 days of receiving a right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1). The last right-to-sue letters were issued on April 24, 2009, and the Plaintiffs' complaint was not filed until October 1, more than 150 days later.

In the face of the clear untimeliness of this action, the Plaintiffs contend that the filing of the motion for leave to file an amended complaint in Alabama tolls the statute of limitations in this case. We disagree. Federal Rule of Civil Procedure 15 governs the amendment of pleadings and, in pertinent part, it provides that "a party may amend its pleading only with the opposing party's written consent or the court's

6

leave." Fed. R. Civ. P. 15(a)(2).[4] Under Rule 15, however, an amended complaint is not actually "filed" until the court grants "leave" for the amendment. Murray v. Archambo, 132 F.3d 609, 612 (10th Cir. 1998) (noting "an amendment that has been filed or served without leave of court . . . is without legal effect"). For instance, in Bridges v. Department of Maryland State Police, 441 F.3d 197 (4th Cir. 2006), the original plaintiffs moved to amend their complaint to add 18 individual would-be plaintiffs. The district court denied the motion to amend, concluding that the 18 would-be plaintiffs' claims were time barred. The would-be plaintiffs appealed the denial of the motion to amend, and we concluded that they lacked standing to appeal because, with the motion to amend denied, they "never became parties to the action." Bridges, 441 F.3d at 207.

The Fifth Circuit has explained the operation of Rule 15 in this situation as follows:

---

[4] In contrast to motions to amend, the initial filing of a complaint is governed by Rule 3, which explains that "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. In conjunction with Rule 3, Rule 5 provides that a "paper is filed by delivering it" to "the clerk" or "a judge who agrees to accept it for filing." Fed. R. Civ. P. 5(d)(2). Under these rules, "[t]he original complaint [is] considered filed when . . . placed in the possession of the clerk of the district court." 4 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1153, at 471 (3d ed. 2002).

7

> [F]ailing to request leave from the court when leave is required makes a pleading more than technically deficient. The failure to obtain leave results in an amended complaint having no legal effect. Without legal effect, it cannot toll the statute of limitations period.

U.S. ex rel. Mathews v. HealthSouth Corp., 332 F.3d 293, 296 (5th Cir. 2003) (emphasis added).

In HealthSouth, the plaintiff, Mathews, filed an action against his former employer under the False Claims Act on April 1, 1999. Without leave of the court, he filed an amended complaint on August 2, adding state law claims for, inter alia, age discrimination. The clerk of court issued Mathews a deficiency notice for failing to seek leave to file the amended complaint, and on August 9, he complied with Rule 15(a) and requested leave to file the amended complaint, which the district court granted the same day. The statute of limitations on the age discrimination claim ran on August 4, 1999. The district court ultimately dismissed the age discrimination claim as time-barred even though the claim was timely when the plaintiff first filed the amended complaint. On appeal, the plaintiff contended that, under Rule 3 and Rule 5, the age discrimination claim was timely "filed" on August 2 when he filed the amended complaint. The Fifth Circuit disagreed, explaining that "[u]nder Rule 15(a), [the plaintiff] needed permission before his amended complaint could be filed, which he

8

did not have on August 2." Id. at 296. Without this permission, the filing had "no legal effect" and "cannot toll the statute of limitations period." Id. The Fifth Circuit further noted that, while Rule 5 would deem a technically deficient pleading "filed," because, "[a]s the more specific rule with respect to amended pleadings, Rule 15(a), not Rule 5[] governs." Id.

Likewise, in this case, although the Title VII claims were timely when the Plaintiffs moved for leave to file the amended complaint, the motion for leave was never granted. The amended complaint was thus never filed and lacks the ability to toll the limitations period. This conclusion is consistent with the general rule that a Title VII complaint that has been filed but then dismissed without prejudice does not toll the 90-day limitations period. See, e.g., O'Donnell v. Vencor Inc., 466 F.3d 1104, 1111 (9th Cir. 2006) ("In instances where a complaint is timely filed and later dismissed, the timely filing of the complaint does not toll or suspend the 90-day limitations period." (internal quotation marks omitted)); Simons v. Sw. Petro-Chem, Inc., 28 F.3d 1029, 1030-31 (10th Cir. 1994) (same).[5]

---

[5] We have approved of this reasoning in several unpublished cases. See Quinn v. Watson, 119 Fed. App'x 517, 518 n.* (4th Cir. 2005) ("In instances where a complaint is timely filed and later dismissed, the timely filing of the complaint does not 'toll' or suspend the ninety-day limitations period.").

9

As the Seventh Circuit has explained—outside the Title VII context—"if the suit is dismissed without prejudice, meaning that it can be refiled, then the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." Elmore v. Henderson, 227 F.3d 1009, 1011 (7th Cir. 2000).

B.

The Plaintiffs emphasize several lines of cases in an effort to avoid this result.[6] First, the Plaintiffs correctly note that courts have generally concluded that when a motion for leave to amend is later granted, the amended complaint is deemed timely even if the court's permission is granted after the limitations period ends. This rule has been explained as follows:

> As a party has no control over when a court renders its decision regarding the proposed amended complaint, the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even

[6] As part of this argument, in their reply brief, the Plaintiffs for the first time assert that this case is analogous to situations in which plaintiffs file a request to proceed in forma pauperis (IFP) in conjunction with their complaint. Of course, a party waives an argument by failing to raise it below, United States v. Evans, 404 F.3d 227, 236 n.5 (4th Cir. 2005), and by waiting to raise it until the reply brief, Cavallo v. Star Enter., 100 F.3d 1150, 1152 n.2 (4th Cir. 1996).

10

> though technically the amended complaint will not be filed until the court rules on the motion.

Moore v. Indiana, 999 F.2d 1125, 1131 (7th Cir. 1993). The Plaintiffs contend that this rule applies here. The Plaintiffs' argument on this point faces several problems, however. First, in each of the cases the Plaintiffs rely on, the motion for leave to amend was granted and, as the district court explained, the timeliness of the amended complaint in such cases "stems from the confluence of the plaintiff's timely preservation of the issue for the court's consideration . . . and the court's inherent power to enter a nunc pro tunc order on that motion that retroactively causes the proposed amended complaint to be considered filed as of the date of the motion." (J.A. 511 n.3). Indeed, while several of the cases, e.g., Moore, reference "tolling," earlier cases note that "where the petition for leave to amend . . . has been filed prior to expiration of the statute of limitations, while the entry of the court order and the filing of the amended complaint have occurred after," the "amended complaint is deemed filed within the limitations period." Mayes v. AT&T Info. Sys., Inc., 867 F.2d 1172, 1173 (8th Cir. 1989) (emphasis added).[7] The Plaintiffs' amended

---

[7] This approach stems from a Fifth Circuit case that predates the Federal Rules of Civil Procedure. Rademaker v. E.D. Flynn Exp. Co., 17 F.2d 15, 17 (5th Cir. 1927).

11

complaint cannot be "deemed filed" in a timely fashion because it was never accepted by the district court. Moreover, none of these cases suggests that denying a motion to file an amended complaint in an earlier action in another jurisdiction tolls the statute of limitations for a newly-filed action.[8]

Second, the Plaintiffs rely on Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983), and American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974). In those cases, the Supreme Court held that during the pendency of a class certification, the statute of limitations on any individuals' claims that would be covered by the proposed class is tolled.[9] The Plaintiffs

---

[8] In cases involving the relation back of an amended complaint to an "original pleading," under Rule 15(c), courts have held that a complaint in one case may not relate back to a complaint in another case to avoid the statute of limitations. Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 994 (8th Cir. 1989) ("Rule 15(c) concerns amendments to pleadings. Its plain language makes clear that it applies not to the filing of a new complaint, but to the filing of an amendment"); Bailey v. Northern Ind. Pub. Serv. Co., 910 F.2d 406, 413 (7th Cir. 1990) ("Rule 15(c), by its terms, only applies to amended pleadings in the same action as the original, timely pleading.").

[9] Some courts have referred to American Pipe/Crown, Cork & Seal as "legal tolling" because it "is derived from a statutory source" as opposed to the "judicially created" doctrine of equitable tolling. Arivella v. Lucent Technologies, Inc., 623 F.Supp.2d 164, 176 (D. Mass. 2009). See also Joseph v. Wiles, 223 F.3d 1155, 1166-67 (10th Cir. 2000) (same). We have previously referred to them as a species of equitable tolling. Bridges, 441 F.3d at 211 ("The American Pipe/Crown, Cork & Seal equitable tolling rule is a limited exception to the universal rule that statutes of limitations are impervious to equitable exceptions.").

failed to make this argument until their motion for reconsideration in the district court, and "Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Regardless, we believe this argument is without merit. American Pipe/Crown, Cork & Seal tolling applies when a class action is commenced by the filing of a complaint and tolls an individual's statute of limitations, not the statute of limitations for the proposed class.[10] Bridges, 441 F.3d at 210 (noting that, under American Pipe/Crown, Cork, & Seal, "all class members' claims are tolled at the time the class action is filed, regardless of whether the members eventually intervened or filed new actions"). Under this rule, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." Crown, Cork & Seal, 462 U.S. at 354. The basis for tolling in those cases was the successful operation of Rule 23 and the need to avoid the filing of a multiplicity of suits by thousands of

---

[10] Courts have consistently concluded that American Pipe/Crown, Cork & Seal do not permit class actions to toll the statute of limitations for additional classes to be stacked upon them. See Basch v. Ground Round, Inc., 139 F.3d 6, 11 (1st Cir. 1998) ("Plaintiffs may not stack one class action on top of another and continue to toll the statute of limitations indefinitely.").

plaintiffs in a putative class action. Id. at 349-51. That concern is absent in this case. Moreover, as previously discussed, the Title VII claims in this case were never "filed," because the Alabama district court denied the motion for leave to file the amended complaint. Even assuming American Pipe/Crown, Cork, & Seal applied to a separate class action in a different venue, the rule still requires the actual filing of an action in the first instance, which never occurred in this case with respect to the Title VII claims.

Accordingly, we find that neither the Rule 15 cases the Plaintiffs rely on—which are more properly characterized as dealing with nunc pro tunc power than tolling—nor American Pipe/Crown Cork & Seal provide relief for the untimely filing of the Plaintiffs' complaint.

### C.

The Plaintiffs contend in the alternative that the statute of limitations should be equitably tolled in this case. Equitable tolling is a narrow exception to statutes of limitations and is appropriate "where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987). The doctrine operates to keep defendants from engaging in "misconduct that prevents the plaintiff from filing his or her claim on time." Id. In

14

contrast, equitable tolling is not appropriate in cases where "the claimant failed to exercise due diligence in preserving his legal rights." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). We review the district court's denial of equitable tolling for abuse of discretion. Chao v. Virginia Dep't of Transp., 291 F.3d 276, 279-80 (4th Cir. 2002).

Having reviewed the record, we agree with the district court that equitable tolling is inappropriate in this case, and we certainly can discern no abuse of discretion in that decision. Our caselaw on equitable tolling has consistently focused on external factors hampering the ability to file a timely claim, and no such factor is present in this case. See e.g., Williams v. Giant Food Inc., 370 F.3d 423, 430 n.4 (4th Cir. 2004) (quoting Kokotis v. United States Postal Serv., 223 F.3d 275, 280 (4th Cir. 2000) (noting equitable tolling "is not appropriate, here, because [the plaintiff] did not allege that [the defendant] deceived or misled her . . . 'in order to conceal the existence of a cause of action.'")).

The Plaintiffs rely heavily on Burnett v. New York Central Railroad Co., 380 U.S. 424 (1965), but, like the district court, we believe that case is inapposite. In Burnett, the plaintiff timely filed an action under the Federal Employers' Liability Act (FELA) in an Ohio state court. Id. at 424. The state court dismissed the action for improper venue, and the plaintiff

15

refiled eight days later in federal court. Id. at 425. The state action was timely filed, but the federal action was not. Id. at 426. The Court held that equitable tolling was appropriate because "when a plaintiff begins a timely FELA action in state court having jurisdiction, and serves the defendant with process and plaintiff's case is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit." Id. at 434-35. The Court found it significant that the plaintiff "did not sleep on his rights" but timely filed an action in state court, that service of process was made, that Ohio permitted waiver of venue objections, and that the defendant railroad itself had previously waived improper venue. Id. at 429. As the district court properly noted, however, there are "key factual and procedural distinctions" between Burnett and this case, namely that "unlike in Burnett, no timely Title VII action was ever actually commenced" because the motion to amend was never granted. (J.A. 516).

In affirming the district court's conclusion on equitable tolling, we emphasize that the Plaintiffs had two avenues available to ensure that their rights were vindicated in this litigation. First, to the extent the Plaintiffs believe the district court in Alabama committed legal error in denying the motion to amend, they could have appealed that decision to the

16

Eleventh Circuit. The Plaintiffs are asking us to equitably toll the statute of limitations, not because they were misled by Dollar Tree, or provided inaccurate information by the EEOC, but because of an unfavorable judicial decision—a decision that they have not appealed. Second, the Plaintiffs could have protected themselves by timely filing an action in the Eastern District of Virginia—an option still available at the time the district court indicated that it was likely to reject the motion for leave to amend. The Plaintiffs declined to do so even though, in their own motion for "Consent to Sever," they recognized the potential statute of limitations problems. As the district court explained, the "procedural details . . . highlight the gamble that plaintiffs' counsel knowingly made. . . . Plaintiffs' counsel lost that gamble when [the Alabama district court] denied the motion for leave to amend." (J.A. 519).

Accordingly, under these particular circumstances, we agree with the district court that equitable tolling was not appropriate.

### III.

For the foregoing reasons, we affirm the district court's grant of Dollar Tree's motion to dismiss.

AFFIRMED

17

DAVIS, Circuit Judge, dissenting:

Not least because I am confident that Chief District Judge Sharon Lovelace Blackburn of the United States District Court for the Northern District of Alabama could not remotely have believed, when she dismissed Appellants' Title VII claims in lieu of transferring venue to the Eastern District of Virginia, that these Appellants would arrive at the Fourth Circuit only to find the courthouse door locked, I respectfully dissent.

The majority ignores the compelling facts of this case and principally relies on outside circuit authority that is not on point to reach a fundamentally unfair result.

First, the majority unfairly takes the Appellants and their counsel to task for filing their Title VII claims in the Northern District of Alabama, suggesting that the outcome is justified here because of their own inaction. The majority suggests the Appellants' consent to severance was a "recogni[tion of] the potential statute of limitations problems," Maj. Op. at 4, 17, but fails to mention that the Appellants only consented to severance because of the original (senior district) judge's "standing instruction against assignment of any case with Rule 23 allegations." J.A. 257. Indeed, in the consent to severance, they argued that venue was proper in the Northern District of Alabama.

18

Perhaps more problematic, the majority emphasizes that the district court "signal[ed]" to the Appellants "about their need to file in the proper district," Maj. Op. at 5, as if the signalling had the legal effect of a final decision on the matter.[1] The Appellants, however, did not know at that point that venue was "improper" in the Northern District of Alabama and cannot be faulted for failing to act on the judge's mere passing comments during the hearing. Moreover, counsel had to know, and it seems they did know,[2] that the district court at this point could have, and should have, transferred the Title VII claims.

---

[1] I am quite uncertain what to make of the majority's observation that Appellants "[f]ail[ed] to recognize the Alabama district court's signal about their need to file in the proper district," Maj. Op. at 5, or how, precisely, that supports the outcome reached by the majority. It is true that at the hearing on the motion to amend in this case, Chief Judge Blackburn said what the majority attributes to her. But, local legal culture being whatever it is in the Northern District of Alabama, the judge also referred during the hearing to counsel by his nickname, "Bob." J.A. 263. I have previously acknowledged that "local legal culture drives [certain] practices." Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 414 (4th Cir. 2010) (Davis, J., concurring); Priestley v. Astrue, 651 F.3d 410, 420 (4th Cir. 2011) (Davis, J., concurring). Nevertheless, deciding cases in this circuit on the basis of ostensible "signals" sent by out-of-circuit district judges to out-of-circuit lawyers in cases heard outside this circuit does not commend itself to me.

[2] See J.A. 255 (citing, in consent to severance, a case for the proposition that "the 'interests of justice generally instructs courts to transfer cases to the appropriate judicial district, rather than dismiss them'") (brackets and ellipses omitted); Appellants' Br. 3 ("Rather than transferring such claims, however, Chief Judge Blackburn dismissed them without prejudice to refiling in the Eastern District of Virginia.").

19

See 28 U.S.C. §§ 1404(a), 1406(a); Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962); see also J.A. 517 (district judge in the Eastern District of Virginia noting that the Court's analysis in Goldlawr "could perhaps have been employed" to justify granting the motion and then transferring). And furthermore, the majority seems to believe that most of the Appellants' claims could have been "saved" at this point by filing elsewhere. See Maj. Op. at 5 ("[O]nly 76 days had passed since the EEOC issued the April 24 right-to-sue letters."). The majority turns a blind eye to the whole truth: Only two named plaintiffs received the April 24 right-to sue letters; more than 90 days had passed since 29 of the named plaintiffs had received the right-to-sue letters.

Second, the majority conveniently omits important facts that show the fundamental unfairness of the result it reaches. The Appellants did not engage in delay or unwisely "gamble" on their claims by engaging in baseless litigation in the Northern District of Alabama. Maj. Op. at 17 (quoting J.A. 519). Rather, they had a sound legal basis for their belief that venue was proper for the Title VII claims in the Northern District of Alabama. They asserted that under Title VII each named plaintiff did not need to independently show venue was properly laid in the district; rather, it was enough for at least one named plaintiff to be properly venued. See Appellants' Br. 40. They also asserted that they could rely on venue being proper for six

20

of the named plaintiffs, or "class representatives," J.A. 371, while the remaining non-Alabama named plaintiffs could remain as class members until the court decided whether there would be a class. See Appellants' Br. 40. They also relied on a pendent venue argument. See id. Chief Judge Blackburn rejected these arguments, but not on the basis of well-established Eleventh Circuit precedent.[3] Rather, she relied on an unpublished Eleventh Circuit case,[4] district court cases from other circuits, and the doctrine of judicial estoppel. Moreover, as the Appellants point

---

[3] Indeed, in making the final argument that leave should be denied because venue was improper in its opposition, Dollar Tree urged the court to "adopt the view of its sister courts in other Circuits and require that each named plaintiff individually satisfy the express venue provisions set forth in Title VII" "[i]n the absence of Eleventh Circuit authority." J.A. 241 (emphasis added).

[4] The Eleventh Circuit has said,

"Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36–2. Furthermore, "[t]he court may cite to [unpublished opinions] where they are specifically relevant to determine whether the predicates for res judicata, collateral estoppel, or double jeopardy exist in the case, to ascertain the law of the case, or to establish the procedural history or facts of the case." 11th Cir. R. 36, I.O.P. 7.

Borden v. Allen, 646 F.3d 785, 808 n.27 (11th Cir. 2011); see also Boutwell v. Advance Constr. Servs., No. 07-0447-WS-C, 2007 WL 2988238, at *4 n.4 (S.D. Ala. Oct. 11, 2007) ("Even if defendant's construction of [Pinson v. Rumsfeld, 192 F. App'x 811 (11th Cir. 2006), the case relied upon by Chief Judge Blackburn] were valid, which it is not, the fact remains that Pinson is unpublished and therefore nonbinding.").

21

out in their brief, "in an identical case," a district judge in the Northern District of Alabama had ruled "that out-of-state Store Managers for a rival dollar store chaing [sic] could bring their Title VII claims in the same district as their parallel EPA claims." Appellants' Br. 36-37 (citing Colvert v. Dolgencorp, Inc., Order, No. 2:06-cv-465-veh (N.D. Ala. Nov. 30, 2007)). Thus, despite having a legal foundation for filing in the Northern District of Alabama, because Chief Judge Blackburn denied their motion to amend and failed to transfer their claims, even though Appellants filed the instant complaint the very next day in the Eastern District of Virginia, Appellants have been denied their deserved day in court. This is unconscionable.

Third, the majority compounds this fundamental injustice by relying principally on outside circuit authority, which is not on point, instead of more compelling reasoning behind cases cited by the Appellants, which are entirely consistent with the letter and the spirit of the Federal Rules of Civil Procedure and the purpose of statutes of limitations generally.[5] The

---

[5] The Fourth Circuit case the majority relies upon to reach its conclusion is inapposite. In Bridges v. Department of Maryland State Police, 441 F.3d 197, 206-07 (4th Cir. 2006), this court had no reason to directly construe Rule 15, but instead considered whether would-be plaintiffs had standing to appeal.

22

majority relies principally on <u>U.S. ex rel. Mathews v. HealthSouth Corp.</u>, 332 F.3d 293 (5th Cir. 2003), which concerned the requirement under Rule 15 to request leave of the court before filing an amended complaint. There, the plaintiff only ever properly filed the correct documents, a motion requesting leave to amend and the amended complaint, after the limitations period had run. <u>Id.</u> at 295. Thus, the court had no need to address whether, as here, the limitations period is tolled where a party moves for leave to file the amended complaint when the claims are timely but the motion for leave is not granted.

The cases relied on by the Appellants, which the majority rejects, are also admittedly not directly on point, but are more consistent with the purpose behind the rules of civil procedure and limitations periods generally. As the majority notes, courts have generally concluded that, when a motion for leave to amend is later granted, the amended complaint is deemed timely even if the court's permission is granted after the limitations period ends. At least one of the underlying reasons justifying this result is that plaintiffs "ha[ve] no control over when a court renders its decision regarding the proposed amended complaint." <u>Moore v. Indiana</u>, 999 F.2d 1125, 1131 (7th Cir. 1993); <u>see also</u> <u>Sellers v. Butler</u>, No. 02-3055-DJW, 2007 WL 2042513, at *12 (D. Kan. July 12, 2007) ("To hold otherwise would punish the plaintiff for the Court's unavoidable delay in issuing the order

23

granting leave to amend the complaint."). This fairness concern applies equally where the motion for leave to amend is granted as where it is denied; indeed, the concern is heightened where the motion is ultimately denied. It is particularly apt here.

Allowing tolling under this rule is more consistent with the policies behind the Federal Rules of Civil Procedure. Rule 1, which "governs all the rest," Aikens v. Ingram, 652 F.3d 496, 519 (4th Cir. 2011) (King, J., dissenting), provides that the Federal Rules of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." The Appellants' decision to amend their complaint to add their parallel Title VII claims to the pending EPA claims in the Northern District of Alabama is wholly consistent with this rule. It was also consistent with Rule 23, which "permits and encourages class members to rely on the named plaintiffs to press their claims" and to avoid a "needless multiplicity of actions," Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 351–53 (1983), and Rule 15, which is to be applied liberally to ensure "that pleadings are not an end in themselves but are only a means to assist in the presentation of a case to enable it to be decided on the merits," Wright et al., Federal Practice and Procedure § 1473 (3d ed. 2010). Furthermore, the defendants had notice and would not have been prejudiced in any fashion by allowing the case to

24

proceed to the merits.[6] See Crown, Cork & Seal, 462 U.S. at 352

("Limitations periods are intended to put defendants on notice

_____

[6] In dismissing this case, the district judge in the Eastern District of Virginia observed:

> The court notes at the outset of this discussion plaintiffs' position that any claim by defendant of prejudice in this connection is dubious. As noted above, this case involves substantially the same named plaintiffs (and putative plaintiff class) as those in Collins I, suing the same defendant for a claim arising out of the same conduct set out in the original complaint in Collins I. Moreover, defendant clearly had actual notice within the statute of limitations period--in the form of the motion for leave to amend in Collins I, which attached the proposed amended complaint--of plaintiffs' intent to pursue a Title VII claim in addition to its existing Equal Pay Act claim. It is therefore entirely arguable, and even somewhat persuasive, that permitting this case to proceed would not offend the admittedly strong policy considerations underlying the statute of limitations defense.

J.A. 514-15.

Similarly, in denying the Appellee's post-judgment motion for attorney's fees and sanctions, the lower court had this trenchant observation:

> Indeed, in a sense, plaintiffs were merely doing what Judge Blackburn's decision on their motions for leave to amend the Collins I complaint forced them to do; namely, to bring their Title VII claim as a separate action in this court, where, it should be noted, defendant had repeatedly argued venue was proper. It is somewhat ironic that defendant now seeks to characterize as vexatious multiplication of proceedings the very act that it had previously chastised plaintiffs for not doing; namely, filing their Title VII claim against defendant in this court instead of in the Northern District of Alabama.

(Continued)

25

of adverse claims and to prevent plaintiffs from sleeping on their rights . . . ."). The majority's ruling contorts the purposes of these rules by encouraging multiple filings in multiple courts, deterring similar plaintiffs in collective actions from bringing parallel claims, and ensuring that this case is not decided on the merits.[7]

At the end of the day, I am confident that if Chief Judge Blackburn had any inkling whatsoever that in dismissing rather than transferring this action, she would foreclose further proceedings, she would take it all back. I would act on that confidence and reverse the order dismissing this case and remand for further proceedings.[8]

---

Collins v. Dollar Tree Stores, Inc., Opinion and Order, No. 2:09-cv-00486-JBF, at 21-22 (E.D. Va. May 28, 2010) (final emphasis added).

[7] Plainly, under the circumstances of this case, we should allow "the limitations period to be tolled during the pendency of related litigation because it [is] consistent with the [remedial Title VII] statutory scheme and equitable principles to do so." Bowen v. City of New York, 476 U.S. 467, 479 n.11 (1986) (alterations added); see also Honda v. Clark, 386 U.S. 484, 501 (1967) ("We consider it much more consistent with the overall congressional purpose to apply a traditional equitable tolling principle, aptly suited to the particular facts of this case and nowhere eschewed by Congress, to preserve petitioners' cause of action.").

[8] My confidence is bolstered by Chief Judge Blackburn's recognition of the potential harshness of the result, see J.A. 371, and allusion to the alleged "futility" of the Appellants' Title VII claims. But see J.A. 283 (Chief Judge Blackburn (Continued)

Respectfully, I dissent.

---

recognizing that Appellants' time to file a complaint in another venue might have run). But in the circumstances of this case, or any case for that matter, the ostensible "futility" of a claim for purposes of Rule 15's liberal amendment provisions bespeaks the "legal insufficiency" of such a claim, not the simple fact of mislaid venue. Cf. Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999). After all, the very purpose of the venue transfer provisions of 28 U.S.C. §§ 1404(a) and 1406(a) is to correct the kind of inconsequential error in selecting venue as is apparent in this case.

A simple thought experiment demonstrates the correctness of such an outcome. Imagine that a putative class action was timely filed under Title VII laying venue in the Western District of North Carolina but where, arguably, venue lies only in the District of South Carolina. Several months after a hearing on the defendants' contested motion to dismiss (or, as here, alternatively, to transfer) for improper venue, and after the ninety-day period for filing a new action had expired, the district court dismisses the case rather than transferring it to South Carolina. I have no doubt that this court would reverse a decision of the South Carolina district court dismissing a newly-filed action in that district, whether on the basis of legal tolling, equitable tolling, or a plain vanilla abuse of discretion determination. The same result should obtain here.